### CORNELIA FURGERSON v. THE STATE.

No. 367.   Decided March 9, 1910.

**Assault to Murder—Charge of Court—Manslaughter—Aggravated Assault.**

Where, upon trial for assault with intent to murder, the evidence showed that the defendant was assaulted before she fired at the prosecutor, and that unexpectedly a number of armed men surrounded her house at the time, and that said assault upon her produced both pain and bloodshed, the court erred in not submitting the issue of aggravated assault.

Appeal from the District Court of Angelina. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—A judgment from which this appeal results was had in the District Court of Angelina County, on the 26th day of May, 1909, convicting appellant, Mrs. Cornelia Furgerson, of assault with intent to murder, and assessing her punishment at confinement in the penitentiary for two years.

The case is, in many respects, a very unusual one. It would be impossible to make a full statement of the case without encumbering the record with more details than seems essential. The issuable facts, in general, may well be gleaned from the testimony of R. V. Watts, who was sheriff of Angelina County, and upon whom the assault was alleged to have been made, and Bertie Furgerson, a daughter of appellant, who testified on the trial in her behalf. Mr. Watts testified that on the 19th day of December, 1908, he was in the town of Burke, near which Mrs. Furgerson resided; that at the time he had a warrant for the arrest of Effie Furlow on a charge of vagrancy. Miss Furlow was a young woman who lived in Logansport, Louisiana, but who had been visiting Mrs. Furgerson, and an inmate of her house for some little time. Watts testified that on the day in question he went to Mrs. Furgerson's residence, and that the two girls, Bertie Furgerson and Effie Furlow, came out, and Mrs. Furgerson demanded that he halt; that he stayed at the house some four hours arguing with Mrs. Furgerson, and explaining to her the nature of the case against Miss Furlow; that it was a minor offense, and the easiest and best way would be for her to turn her over to him; that she declined to do this, and said that he could not take her; that she was there to protect her; that he finally said to Mrs. Furgerson that he did not come there to hurt her, but he could not afford to go back and say to the good people that he could not arrest this little Louisiana girl, and that he must have her. That Mrs. Furgerson again said to him that he could not have her, and that she would kill him if he came in the gate; that he then said to Mrs. Furgerson that to show her his good faith he asked her to come and take his gun off of him, that he would not hurt her, that if she was a man he would kill her, but he did not want to hurt a woman, to which she replied, calling him a son-of-a-bitch, and telling him to keep his gun, that they had plenty of guns, and good ones, too; that he said to her in this connection not to shoot him; that he was not prepared to die, and not to rush him into eternity unprepared, to which she replied, "You son-of-a-bitch, we are; we are going to hell anyway, and we don't care how soon." That thereupon he spoke to Joe Furgerson, who was present, and said: "Can you show me any way in the world out of this?" to which he replied, "They are hard to handle," and he thought he said, "They are liable to kill you." Mrs. Furgerson then cursed Joe Furgerson and told him she would blow his brains out. That about this time Bob Lee came along, and he told him if he could get two men there to come in from the rear

of the building, one on each side, he would run in and take those guns away from them; that he did not mind the suffering even if he got shot, so they didn't keep him in suspense. That Lee went off and soon after that Ellis and Laird, two neighbors, made their appearance on the west side of the house; that Mrs. Furgerson turned on Laird when he says he made a dash to try to get her, and just about the time he got his hand on the latch of the gate Mrs. Furgerson fired two shots at him; that he fell, but immediately arose with his gun, and aimed to shoot at Mrs. Furgerson's hand to disable her; that in the meantime and immediately thereafter a great many shots were fired; that Mrs. Furgerson shot three times at him. Other witnesses testified that one of appellant's sons had a pistol, and that her daughter had a shotgun. It developed after the fusillade of firing that Mrs. Furgerson was shot in the back, some fifty or sixty small shot entering same, and was also shot in the leg. Miss Furgerson received a more serious wound. Laird, who was approaching Mrs. Furgerson from behind, denied having shot her at all, and also testified that no one shot until after appellant had fired on Watts. He says, in substance, that as he and his companion were approaching Mrs. Furgerson that she turned to fire at him, but the pistol snapped, and that someone called out, "Look at Watts; look at Watts;" that immediately Mrs. Furgerson turned and opened fire on the sheriff. The evidence is uncertain as to who shot Mrs. Furgerson. The evidence rather raises the conviction in our minds that she was shot in the back by her daughter, and the position of the wound also rather inclines us to the opinion that the shot in the leg was not made by Watts, though neither of these facts become important in view of the disposition we shall make of the case. Miss Bertie Furgerson, introduced by appellant, says that when Mr. Watts came to the house that morning, that Mr. Averitt and her father came with him; that her father and mother at the time were not living together, but were separated, and that when Watts arrived he said he had come to divide the property; that her mother was sick that morning and in bed, and one of the boys came in to advise her of Mr. Watts' mission; that she sent word to him that she was not able to see him that morning and for him to come back, and wait until another day, but Mr. Watts sent word back to her to come out for a few minutes, and that she got out of bed and went out there. That they had heard before this a good deal about a mob coming, and all the family went out. Mr. Watts said to her that he did not come to divide the property; that he came to get the girl that was visiting there; that her mother told him to get the girl but not to come inside; that she had heard there was a mob coming after her girl to mob her, and he wanted to come in anyway, and that she held him off and would not let him come in. She says when she first came out she, witness, had a gun, but after talking with Mr. Watts she put it up and never got it any more. That some time after this

a crowd of men came up, about eight of them; that she first saw those men there after they had fired one shot; that at this time her mother was sitting down on the walk; that the first shot came from the left side of the house where McMasters and Laird came out from after the first shot was fired; that at this time her mother had not fired at Watts, and she did not fire until three or four shots were fired. She also testified that the first shot that was fired struck her mother; that she knows this because she flinched from it and holloed, and then she got up; that her mother was talking to Mr. Watts before the crowd came up, and that she had her attention drawn to him. The evidence shows that Mrs. Furgerson was a woman some 45 years of age or more, and had been for some months in right infirm health, and the evidence clearly raises the issue of mental infirmity not only from her ailment but from the use of bromidia. It appeared that she had taken some five or six doses of the medicine on the morning in question. The issues arising in the case were, for the most part, submitted by the court in a manner wholly unexceptional, including both self-defense as well as insanity.

The only ground raised in the motion for new trial, or appearing in the record which we think meritorious is the 9th ground of the motion. This is as follows: "The court failed to deliver to the jury as a part of the law of the case an instruction defining manslaughter, and applying the rules of law with reference thereto to the facts, and telling the jury that defendant would be guilty of aggravated assault if she had killed said Watts; under those circumstances she would only be guilty of manslaughter, in that the testimony in the case clearly raised the issue of manslaughter and aggravated assault and required the court to give an instruction on this issue." While not very aptly presented, we think the complaint of the charge of the court does distinctly raise the issue that the charge was insufficient and injurious, in that under the facts of the case an issue was presented that the shooting was under conditions raising the issue of aggravated assault. The testimony of Miss Furgerson is clearly to the effect that when the eight men appeared, that her mother was in ignorance of their presence, that her attention at the time was directed to Mr. Watts; that some one of these men fired the first shot; that this firing was unexpected, and resulted in a wound to Mrs. Furgerson, and that then, for the first time, her attention being directed to Watts, and he was advancing upon her, she fired. We think, in the first place, the record shows if this witness is to be believed, that before she fired, an assault had been made upon her producing both pain and bloodshed, and that the unexpected appearance of these men with arms in their hands while she was sitting down making no demonstration, was sufficient to produce a condition of rage, terror and resentment rendering the mind incapable of cool reflection. Whether the jury would have taken this view of the case if the issue had been submitted to them, is not for

us to say. If, as we have found, the testimony raised the issue, appellant was entitled to a submission of same.

For the error of the court in not submitting the issue of aggravated assault, the judgment of conviction will be reversed and the cause remanded for another trial.

*Reversed and remanded.*